## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | | |
|---|---|---|
| **REDOAK HOSPITAL, LLC,** | § | |
| *PLAINTIFF* | § | |
| | § | |
| | § | **CIVIL ACTION NUMBER** |
| | § | |
| | § | _____ |
| **VS.** | § | |
| | § | |
| | § | |
| **GAP INC., GAP INC. HEALTH** | § | |
| **AND LIFE INSURANCE PLAN,** | § | |
| **CYNTHIA RADOVICH, and** | § | |
| **LESLEY DALE** | § | |
| *DEFENDANTS* | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, REDOAK HOSPITAL, LLC, (hereinafter, "Plaintiff") files this Original Complaint against Defendants, GAP INC., GAP INC. HEALTH AND LIFE INSURANCE PLAN, CYNTHIA RADOVICH, and LESLEY DALE (hereinafter, collectively "Defendants") and would show the following:

### I. PARTIES

1.      Plaintiff is a Texas limited liability company that operates a hospital located in Houston, Texas. Plaintiff is headquartered in the city of Houston in Harris County, Texas. Plaintiff is the lawful Assignee and Claimant of the claims asserted herein.

2.      Defendant, GAP INC (hereinafter, "GAP") is a multinational corporation with its global headquarters located in San Francisco, California. GAP is a company specializing in the sale of retail goods, specifically clothing. GAP employs over 150,000 individuals worldwide, many of whom are residents of the greater Houston area. The worldwide administrative office for GAP is located at 2 Folsom Street, San Francisco, California 94105.

3.      During all material times, GAP acted as the Plan Sponsor and Plan Administrator for Defendant GAP INC. HEALTH AND LIFE INSURANCE PLAN (hereinafter, the "Plan"). Defendant GAP may be served by serving its attorney of record, Elizabeth Schmiesing in-house attorney for United Healthcare/Optum, per Elizabeth Schmiesing's request on May 6, 2016, at 11000 Optum Circle, Eden Prairie, Minnesota 55344.

4. GAP appointed its employee Defendant CYNTHIA RADOVICH as the Plan's official Plan Administrator, by and through her position as the Plan Administrator for GAP. Defendant CYNTHIA RADOVICH resides and works in San Francisco, California, and may be personally served at his usual place of business, at 1 Harrison Street, San Francisco, California 94105.

5. GAP appointed its employee Defendant LESLEY DALE as the Plan's official Plan Administrator, by and through her position as the Benefits Manger for GAP. Defendant LESLEY DALE resides and works in San Francisco, California, and may be personally served at his usual place of business, at 1 Harrison Street, San Francisco, California 94105.

6. The GAP INC. HEALTH AND LIFE INSURANCE PLAN (hereinafter, the "Plan") is a self-insured welfare benefits plan governed by ERISA. The Plan may be served with process by serving its Plan Administrator, CYNTHIA RADOVICH or GAP, at 1 Harrison Street, San Francisco, California 94105.

## II. JURISDICTION AND VENUE

7.      Plaintiff's claims arise *in part* under 29 U.S.C. §§1001 *et seq.,* Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA"), and asserts Subject Matter Jurisdiction under 28 U.S.C. §1331 (Federal Question Jurisdiction) and 29 U.S.C. §1132(e).

8.      Venue is appropriate in this District under 28 U.S.C. §1391(b) because GAP conducts a substantial amount of business in this District, and employs and provides benefits to residents of this district. Additionally, a substantial part of the events or omissions giving rise to the claims occurred in this district, such as: the collection and contributions of premiums for the Plan, the making of promises and representations as to covered medical benefits to Plan Beneficiaries

(who also work and reside in this district), the provision of health care services to Plan Beneficiaries, the making of promises and representations as to insurance coverage for those health care services, the filing of claims and appeals to the Plan, the exchange of correspondence relating to those claims appeals, and the decision making by fiduciaries of the Plan relating to the issuance of benefits and protection of Plan funds.

### III. Introduction

9.       Plaintiff asserts claims sounding in ERISA.

10.       This dispute arises out of Defendants' ongoing and systematic ERISA violations consisting of an elaborate scheme to abstract, withhold, embezzle and convert self-insured Plan Assets that were approved and allegedly paid to Plaintiff for Plaintiff's claim, to purportedly, but impermissibly, satisfy a falsely alleged "overpayment" for another stranger claim, especially when the  stranger is a plan beneficiary of a fully-insured plan that is insured by the Plan's co-fiduciary, United Healthcare (hereinafter, "United"). Defendants knew or should have known that the Plan's overpayment recovery provisions cannot be triggered until there is an allegation of overpayment by the Plan to the Plan Beneficiary subject to this action, and that converting the Plan Assets by a fiduciary or co-fiduciary of the Plan, in this case United, to the use of another and his own use, to ultimately pay to United's own account is absolutely prohibited under ERISA statutes. Regardless, Defendants and United recklessly conspired, orchestrated and authorized to this kind of self-dealing and embezzlement even while being under active investigation by the Department of Labor and after repeated detailed alerts and notices from Plaintiff regarding the aforementioned.

11.       Defendants and United officially approved Plaintiff's benefit claim and allegedly "paid" the Plaintiff for the approved claims under the terms of the plan, as evidenced by the Plan official Provider Explanation of Benefits (hereinafter, "EOB") and Electronic Remittance Advice (hereinafter, "ERA 835") as "Allowed Amount" and "paid to provider"; however, in truth and in

fact, Plaintiff was never paid its entitled amount. [1] Thus, there is, nor has there ever been, a dispute over the determined amount of the Plaintiff's benefits entitlement under the Plan, but the dispute hinges on the fact that Plaintiff has yet to be paid the amount Plaintiff is entitled to. Being that these claims were never paid to Plaintiff on behalf of the Plan Beneficiary and fraudulently withheld by United with Defendants' full and complete knowledge, the Plan Beneficiary is left exposed to personal liability for their unpaid medical bills.

12.     The Defendants and United, as Plan co-fiduciaries, engaged in a deliberate, calculated and fraudulent scheme to conceal the aforementioned prohibited transaction and embezzlement as evidenced by the issuing of inconsistent ERA 835s and Provider EOBs to deceive Plaintiff and its Plan Beneficiary as to the actual amount that was paid to the Plaintiff (ERA 835 is attached as Exhibit A and Provider EOB is attached as Exhibit B).

13.     Defendants and United continued to conceal this kind of unlawful embezzlement and conversion of Plan Assets, camouflaged as "overpayment recoupment or offset", even after it became fully knowledgeable of this self-dealing and embezzlement through investigation by the Department of Labor and repeated notices and alerts from the Plaintiff. Defendants failed to remedy the verified embezzlement even after investigation by the Department of Labor and at least three (3) levels of administrative appeals, notices, and alerts by Plaintiff.

14.     At the heart of this action is Defendants' wholesale failure to uphold their statutory fiduciary duties owed to its own Plan Beneficiaries. Defendants, in direct violation of their statutory fiduciary duties, knowingly entered into an unlawful agreement with their co-fiduciary, United, that ***blatantly*** ignores, overlooks, and directly creates prohibited conflicts of interest, permitting United to withhold Plan Assets and convert them to its own use/benefit. Despite a clear, statutory bar to this type of prohibited self-dealing, Defendants agreed to an illegitimate

---

[1] An allowed amount is the maximum amount an insurer will pay for a covered health service, the remainder owed by the insured is called "balance billing".  http://obamacarefacts.com/allowed-amount-and-balance-billing-health-insurance/

recoupment scheme that financially rewards United for wrongfully recouping valid benefits due to Plaintiff; thus, resulting in an arrangement where United, a co-fiduciary, reprehensively takes Defendants' Plan Assets at the personal expense of both the Defendants and its Plan Beneficiaries.

15.  Despite actual knowledge of United's self-dealing misconduct stemming from repeated notices and investigative request from Plaintiff's numerous official ERISA appeals, Defendants systematically refused to take corrective action. Instead, Defendants delegated investigation of the suspected embezzlement to United – the identified perpetrator of the illegal action.  Further, Defendants continued to promote, enable, authorize, and ratify United's wrongful misappropriation of Plan Assets at the direct expense of the Plan Beneficiaries.  Defendants violated their statutory fiduciary (and co-fiduciary) duties by promoting, encouraging, authorizing, assisting, and enabling United, their designated agent and co-fiduciary, to unjustly enrich itself through an intricate embezzlement/recoupment scheme that converted the Plan Asset's to its own use.

16.  Based on the undisputed fact that Plaintiff was not actually paid the same amount as reported or certified on the Plan ERA 835, it is likely that Plaintiff was injured or harmed by the inaccurate tax form 1099 issued by Defendants and reported to Internal Revenue Service, in turn, Defendants may have falsely filed either fraudulent and/or inaccurate tax returns on the 5500 Form with the Internal Revenue Service and Department of Labor, with respect to the amount paid to Plaintiff and third party service provider, United, on Schedule A of the 5500 Form.

## IV. FACTUAL ALLEGATIONS

### A. *Background as to Self-Insured Health Plans Governed by ERISA and OON Providers*

17.  Generally speaking, throughout America, individuals not eligible for Medicare or Medicaid typically obtain health insurance coverage through his or her own employer, or through a family member's employer. Those employers can provide health insurance on either a fully-insured or self-insured basis. When an employer provides fully-insured health insurance, the

employer and/or employees pay premiums to a third party commercial insurance company, and the

medical costs of the employees are paid using the insurance company's funds.

### Fully-Insured Plans

- **Risk**: In a full insured plan, the employer pays a per-employee premium to an insurance company, and the insurance company assumes the risk of providing health coverage for insured events.

- **Plan Characteristics**: In full insured arrangements, premiums vary across employers based on employer size, employee population characteristics, and health care use. Premiums can also change over time within the same employer because of changes in the demographics of the employed group. However, employers are charged the same premium for each employee.

- **Employer Size**: Small employers that offer health benefits are typically fully insured. In 2008, 88 percent of workers in firms with 3–199 employees were in fully insured plans. Smaller firms are typically located in one office or region (if they are on the large side of small).

- **Market Share**: Overall, 45 percent of workers with health insurance were covered by a fully insured plan in 2008.[2]

18.     By contrast, when health insurance is offered by an employer on a self-insured basis, the employer assumes the risk for payment of the medical claims by sponsoring a benefits plan that forms a specific fund for that purpose.  The resulting fund enjoys certain tax breaks, and is funded by the employer and/or employees who contribute premium payments.  The health care claims of the enrolled employees and their dependents are then paid with the finances of the fund.

### Self-Insured Plans

- **Risk**: In a self-insured plan, instead of purchasing health insurance from an insurance company and paying the insurer a per-employee premium, the employer acts as its own insurer. In the simplest form, the employer uses the money that it would have paid the insurance company and instead directly pays health care claims to providers. **Self-insured plans often contract with an insurance company or other third party to administer the plan, but the employer bears the risk associated with offering health benefits.**

- **Plan Characteristics**: Large employers often offer multiple self-insured health plans to different classes of workers. Benefits may vary for management and labor, and benefits may vary by occupation or even hours of work. Even when

---

[2] Employee Benefit Research Institute, Fast Facts, Health Plan Differences: Fully-Insured vs. Self-Insured - https://www.ebri.org/pdf/ffe114.11feb09.final.pdf

an employer offers a uniform benefits program across all locations and geographic regions, the cost of providing the program—commonly known as the premium equivalent— will vary because the cost of health care services is not uniform across the United States.

- **Employer Size**: In 2008, 89 percent of workers employed in firms with 5,000 or more employees were in self-insured plans.

- **Market Share**: Overall, 55 percent of workers with health insurance were covered by a self-insured plan in 2008.[3]

19.     Unless exempted, self-insured health benefit plans are governed and regulated by the Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA").  Pursuant to ERISA, by statute, a self-insured health benefit plan must set forth in a written official plan document or plan instrument specific details, such as the terms of eligibility for enrollees, the benefits covered, and more.[4]

20.     Often times, an employer (*i.e.* Plan Sponsor) who elects to have a self-insured health plan contracts with a third party commercial insurance company to oversee the claims processing and other administrative services.  The employer and the third party commercial insurance company, also known as the Third Party Administrator (hereinafter, "TPA"), enter into an Administrative Services Only ("ASO") contract or agreement.[5]

21.     United is a third party commercial insurance company that provides TPA administrative services to various self-insured plans under ASO contracts.  In exchange for the payment of fees, United provides claims processing and other administrative services to the plans,

---

[3] Employee Benefit Research Institute, Fast Facts, Health Plan Differences: Fully-Insured vs. Self-Insured - https://www.ebri.org/pdf/ffe114.11feb09.final.pdf

[4] The US Department of Labor – Employee Benefit Security Administration provides detailed about the relationship between self-insured plans and ERISA - https://www.dol.gov/ebsa/publications/ghpfiduciaryresponsibilities.html

[5] An ASO contract is an arrangement in which an organization funds its own employee benefit plan such as a pension plan or health insurance program but hires an outside firm to perform specific administrative services. For example, an organization may hire an insurance company to evaluate and process claims under its employee health plan while maintaining the responsibility to pay the claims itself - http://www.investopedia.com/terms/a/administrative-services-only.asp

as well as access to United's network of providers.  United's network of providers are considered in-network because they enter into Preferred Provider Organization ("PPO") contracts with United.[6]

22.     In accordance with PPO contracts between United and its in-network providers, United's in-network providers agree to accept negotiated lower amounts for their services. In-network providers agree to the lower rates in exchange for a higher volume of patients that results from being part of United's published managed care network.  Thus, when a plan beneficiary receives health care services from an in-network provider, the Plan is only obligated to pay the in-network provider the negotiated amount set by the PPO contract.  Critically, pursuant to the PPO contract between the in-network provider and United, the in-network provider agrees to accept the lower negotiated rate as payment in full for the service. Additionally, under the PPO contract with United, the in-network provider agrees to have no recourse against the patient for any difference in amount between the provider's normal charge for the procedure and the negotiated lower rate.  In other words, by contract, the in-network provider is precluded from ever balance-billing the patient.[7]

23.     Since the amount owed by the Plan to the in-network provider is already determined by the pre-negotiated fee rates set by the PPO contract with United, and because the PPO contract also precludes the in-network provider from ever balance-billing the patient, the in-network provider's request for payment from the Plan is deemed to be governed by the PPO contract, and is therefore not considered an ERISA claim for benefits.[8]

---

[6] A PPO is a type of health plan that contracts with medical providers, such as hospitals and doctors, to create a network of participating providers. You pay less if you use providers that belong to the plan's network. You can use doctors, hospitals, and providers outside of the network for an additional cost - https://www.healthcare.gov/glossary/preferred-provider-organization-PPO/

[7] Balance Billing is when a provider bills you for the difference between the provider's charge and the allowed amount. For example, if the provider's charge is $100 and the allowed amount is $70, the provider may bill you for the remaining $30.  A preferred provider may not balance bill you for covered services - https://www.healthcare.gov/glossary/balance-billing/

[8] US Department of Labor Employee Benefits Security Administration - FAQ A-8: About the Benefit Claims Procedure Regulation - ERISA does not apply to in-network provider's claims for reimbursement when the provider has no recourse against the claimant for the amount in whole or in part not paid by the insurer or managed care organization. See   http://www.dol.gov/ebsa/faqs/faq_claims_proc_reg.html. (ERISA "does not apply to requests by

24.     By contrast, an OON provider has no contract with United or the Plan, and is not bound to accept the same lower negotiated rates set forth by any PPO contract or fee schedule. Since there is no contract between the OON provider and United or the Plan, the out-of-network (hereinafter, "OON") provider is free to "balance bill" the patient for any amounts unpaid by the Plan.  This also means that the patient may be pursued and held personally liable by the OON provider for any amounts unpaid by the Plan.

25.     Plaintiff is an OON provider that has no contract with United or the Plan. As an OON provider, Plaintiff is not subject to any limitations or agreements contained in any PPO contract.

26.     GAP is an employer that sponsors and administers the Plan, an ERISA governed, self-insured welfare benefit plan created to provide benefits to subscribed GAP employees and the employees' enrolled dependents (hereinafter, collectively "Plan Beneficiaries").

27.     Under the terms of the Plan, the Plan is required to promptly pay benefits for OON services based upon the usual, customary and reasonable rate ("UCR") for that service in the same geographic area.  Whenever the Plan pays less than one hundred (100%) of an OON provider's claim, the Plan's failure or refusal to pay the full amount of the OON provider's charges is deemed an Adverse Benefit Determination under ERISA. [9]

---

health care providers for payments due them – rather than due the claimant – in accordance with contractual arrangements between the provider and an insurer or managed care organization, where the provider has no recourse against the claimant for amounts, in whole or in part, not paid by the insurer or managed care organization.")

[9] US Department of Labor Employee Benefits Security Administration - FAQ C-12: About the Benefit Claims Procedure Regulation - Under ERISA, an adverse benefit determination generally includes any denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit. In any instance where the plan pays less than the total amount of expenses submitted with regard to a claim, while the plan is paying out the benefits to which the claimant is entitled under its terms, the claimant is nonetheless receiving less than full reimbursement of the submitted expenses, and is treated as an adverse benefit determination. - http://www.dol.gov/ebsa/faqs/faq_claims_proc_reg.html

**B.**     ___Plaintiff's Benefits Claim has been Approved for Benefit Payment but Converted and Embezzled by Defendants, through United___

28.     Patient X is a Plan Beneficiary (*i.e.* covered individual) under the terms and conditions of the Plan, and is entitled to medical benefits ***as determined by the Plan***.[10] That is, if the Defendants, through United, make the determination that the services Patient X receives are indeed covered services under the Plan and the covered services are deemed medically necessary, then the Defendants, through United, shall make a determination as to how much to pay Plaintiff for providing services to Patient X.

29.     Before providing healthcare services to Patient X, Plaintiff on February 14, 2014, verified through Defendants' authorized agent, United, that Patient X is a Plan Beneficiary of the Plan sponsored by Defendants, and, as a part of the Plan, Patient X does indeed have OON benefits. This pre-service verification procedure is not only common practice amongst most healthcare provides, but is even more imperative as Plaintiff is a OON provider and must ensure that each patient has OON benefits prior to performing any service. Before providing services to Patient X, Patient X executed a Legal Assignment of Benefits and Designation of Authorized Representative form on February 17, 2014, to designate and assign Plaintiff to be a statutorily defined "Claimant", by assigning Plaintiff rights to receive benefit payments directly and conduct administrative appeals, seek judicial review for benefits claims, breach of fiduciary duty, statutory penalties for failure to provide Plan Documents and any equitable remedies under the law (the Legal Assignment of Benefits and Plaintiff's standing is discussed in detail in Section IV(D))

30.     After receiving verification of Patient X's OON benefits and Patient X assigned Plaintiff as his Claimant, Plaintiff provided healthcare services to Plaintiff, and Patient X incurred eligible and reasonable medical expenses on February 17, 2014. Being that Patient X incurred eligible and reasonable expenses, Plaintiff submitted healthcare claims to Defendants, through United for determination and to be reimbursed for the services Plaintiff provided to Patient X.

---

[10] Patient X is a Plan Beneficiary under the terms and conditions of the Plan, and, in accordance with HIPAA, shall have his name remain confidential.

31.     On May 8, 2014, Plaintiff received the ERA 835 where Defendants, through United, made the final determination that Plaintiff's claim for *$68,517.00* ("Billed Amount") was adjudicated by Defendants, through United, and was allowed for *$75,367.13* ("Allowed Amount").[11] In this case, **the adjudicated Allowed Amount is greater than the Billed Amount**. Defendants, through United, claim that they "issued" the following checks to Plaintiff (i) **"QK92675266 - $42,639.56"**, and (ii) **"QK65360073 - $31,037.52"**, to be paid to Plaintiff but Plaintiff **never** received the checks. Additionally, the ERA 835 also shows that *$34,718.33* was withheld **("WO 20130502 259232A"**) from Plaintiff by Defendants, through United, and converted to United's own use to make itself "whole" for an "overpayment" to a stranger plan.[12] The **259232A** in the withholding section symbolizes the account number that $34,718.33 of Defendants' Plan Assets was withheld for because of an "overpayment" made to Plaintiff, which in this case is Patient Y, a plan beneficiary of Greenfield CR, Inc. who received services on **20130502** (*i.e.* May 2, 2013) from Plaintiff, which is a plan fully-insured by United. **Below, incorporated into this Complaint, is the ERA 835 produced to Plaintiff on May 8, 2014, that highlights the evidence discussed in this paragraph:**

----------INTENTIONALLY LEFT BLANK----------

---

[11] An ERA 835 is a HIPAA mandated and official document that shows the transfer of funds from one account to another. United defines an ERA 835 as the electronic transaction which provides claim payment information in the HIPAA mandated ACSX12 005010X221A1 format. These files are used by practices, facilities, and billing companies to autopost claim payments into their systems. You can receive your 835 files through your clearinghouse, direct connection, UnitedHealthcare's Connectivity Director or download them from UnitedHealthcareOnline.com, with enrollment in Electronic Payments & Statements (EPS) - https://www.unitedhealthcareonline.com/b2c/CmaAction.do?channelId=8e24829bca0ae210VgnVCM2000003010b10a

[12] WO 20130502 259232A - details

UNITED HEALTHCARE INSURANCE COMPANY
P O BOX 740800
ATLANTA, GA 30374-0800

PAYER CONTACT:   GREENSBORO SERVICE CENTER
PHONE:          (877)842-3210

REDOAK HOSPITAL
17400 RED OAK DR
HOUSTON, TX 77090-0000

NPI:            1114291701
NON-PAYMENT:    QK92675266
CHECK DATE:     05/08/2014
PRODUCTION DATE: 05/08/2014

| PROV | SERV DATE | POS | NOS | PROC | MODS | BILLED | ALLOWED | DEDUCT | COINS | GRP/RC-AMT | PROV PD |
|------|-----------|-----|-----|------|------|--------|---------|--------|-------|------------|---------|

NAME:  ████████                                    ACT:293144A              ICN:4520209421
                                                                            0016663179
GRP/POL NUM: 189897

|  | 0217 021714 | 131 | 2 | 64483 | RTTC | 14542.00 | 14542.00 | 0.00 | 0.00 | PI-45  29084.00 | 0.00 |
|  |             |     |   |       |      |          |          |      |      | PI-94 -14542.0 |      |
|  |             |     |   |       |      |          |          |      |      | 0 |      |
|  | 0217 021714 | 131 | 0 | 64483 | LTTC | 14542.00 | 14542.00 | 0.00 | 0.00 | PI-45  14542.00 | 0.00 |
|  | 0217 021714 | 131 | 2 | 64484 | RTTC | 12554.00 | 12554.00 | 0.00 | 0.00 | PI-45  25108.00 | 0.00 |
|  |             |     |   |       |      |          |          |      |      | PI-94 -12554.0 |      |
|  |             |     |   |       |      |          |          |      |      | 0 |      |
|  | 0217 021714 | 131 | 0 | 64484 | LTTC | 12554.00 | 12554.00 | 0.00 | 0.00 | PI-97  12554.00 | 0.00 |
|  | 0217 021714 | 131 | 1 | J2250 |      | 586.00 | 7436.13 | 0.00 | 3718.06 | PI-45  6888.87 | 3718.07 |
|  |             |     |   |       |      |          |          |      |      | PI-94 -13739.0 |      |
|  |             |     |   |       |      |          |          |      |      | 0 |      |
|  | 0217 021714 | 131 | 0 | J2250 |      | 664.00 | 664.00 | 0.00 | 0.00 | PI-97  664.00 | 0.00 |
|  | 0217 021714 | 131 | 0 | J2250 |      | 13075.00 | 13075.00 | 0.00 | 0.00 | PI-97  13075.00 | 0.00 |

PT RESP  3718.06                    CLAIM TOTALS   68517.00   75367.13      0.00   3718.06      61080.87   3718.07
ADJ TO TOTALS:          PREV PD     0.00      INTEREST  0.00   LATE FILING CHARGE  0.00      NET   3718.07
    TOTALS:  # OF CLAIMS   BILLED AMT   ALLOWED AMT   DEDUCT AMT   COINS AMT   RC-AMT   PROV PAID   PROV ADJ   CHECK AMT
         1                 68517.00     75367.13      0.00        3718.07     61080.87   3718.07    23116.29   0.00

PROVIDER ADJ DETAILS:           PLB REASON CODE     FCN                  HIC              AMOUNT
                                FB                  QK65360073                            31037.52
                                FB                  QK92675266                            42639.56
                                WO                  20130502 259232A                      34718.33

GLOSSARY:       Adjustment, Group, Reason, MOA, and Remark codes
PI-             Payor initiated reductions. In the opinion of the payer, the adjustment is not the responsibility of the patient,
                but no supporting contract exists between the provider and the payer.
97              The benefit for this service is included in the payment/allowance for another service/procedure that has already
                been adjudicated. Note: Refer to the 835 Healthcare Policy Identification Segment (loop 2110 Service Payment
                Information REF), if present.
45              Charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement.
94              Processed in Excess of charges.

32.     On May 8, 2014, Plaintiff also received from Defendants, through United, a
***fraudulent and inconsistent*** Provider Explanation of Benefits that contradicts the official ERA 835
in order to conceal its conversion and embezzlement scheme. Although the Billed Amount by
Plaintiff remains consistent on both the ERA 835 and the EOB, the Allowed Amount on the EOB
is $7,436.13 even though the ERA 835 certifies that Defendant has withdrawn money with the
following check ***"QK92675266 - $42,639.56"*** to be paid to Plaintiff but Plaintiff ***never*** received
this check. Additionally, the ERA 835 also shows that ***$34,718.33*** was withheld ***("WO 20130502
259232A")*** and converted to pay the alleged overpayment for Patient Y. Defendants and United
knew or should have known that the Provider EOB is ***fraudulent and not*** the true and correct
explanation of Patient X's benefits because the withheld amount on the Provider EOB shows it is
greater than the Allowed Amount on the Provider EOB; thus, it only make sense that the ERA 835
is the true and correct document representative of Plan Assets being taken from Defendants. The
same is known or should have been known  for ***"QK92675266 - $42,639.56"*** being greater than the
Allowed Amount on the Provider EOB. ***Below, incorporated into this Complaint, is the Provider***

*EOB produced to Plaintiff on May 8, 2014, that highlights the evidence discussed in this*

*paragraph:*

----------INTENTIONALLY LEFT BLANK----------

11-267*03*000005-PM-14128-120*C07ASOBOATOPS
STD - SOB

United HealthCare Services, Inc.
BUFFALO SERVICE CENTER
PO BOX 30555
SALT LAKE CITY, UT 84130-0555
PHONE: 1-877-842-3210

**UnitedHealthcare®**
A UnitedHealth Group Company

DATE: 05/08/14
TIN: 45-4432712
NPI: 1114293701
GROUP NUMBER: 0189897
GROUP NAME: GAP INC.
CHECK NUMBER: OK 92675265
CHECK AMOUNT: $0.00

RED OAK HOSPITAL
REDOAK HOSPITAL
17400 RED OAK DR
HOUSTON, TX 77090

**PROVIDER**
**EXPLANATION OF**
**BENEFITS**

**PATIENT:**

MEMBER NAME:
MEMBER ID: A 912026764
PRODUCT: CHOYC+
PATIENT ACCOUNT: 293144A

CONTROL NUMBER: 452020942101
DATE RECEIVED: 04/11/14
PROVIDER OF SERVICE: REDOAK HOSPITAL

| DATE(S) OF SERVICE | REV CODE SUB/ ADJ | CPT- HCPCS SUB/ADJ | MOD SUB/ ADJ | UNITS SUB / ADJ | AMOUNT CHARGED | AMOUNT ALLOWED | ADJ AMOUNT | GRP CODE | CLAIM ADJ RSN CODE | APC/ OPG GRP CD | APC 5I | APC RC | OCE EDIT CD | PAID TO PROVIDER | REMARK/ NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/17/14 | 0490 / 0500 | 64483 | RT/TC | 1 | $14,542.00 | | $29,084.00 -$14,542.00 | PI | 45 94 | | | | | $0.00 | CY |
| 02/17/14 | 0490 / 0500 | 64483 | LT/TC | 1 | $14,542.00 | | $14,542.00 | PI | 97 | | | | | $0.00 | CY |
| 02/17/14 | 0490 / 0500 | 64484 | RT/TC | 1 | $12,554.00 | | $25,108.00 -$12,554.00 | PI | 45 94 | | | | | $0.00 | CY |
| 02/17/14 | 0490 / 0500 | 64484 | LT/TC | 1 | $12,554.00 | | $12,554.00 | PI | 97 | | | | | $0.00 | CY |
| 02/17/14 | 0350 / 0500 | J2350 | | 1 | $586.00 | $7,436.13 | $6,886.87 -$13,739.00 | PI PI | 45 94 2 | | | | | $3,718.07 | |
| 02/17/14 | 0250 / 0500 | J3010 / J2250 | | 1 | $664.00 | | $664.00 | PI | 97 | | | | | $0.00 | |
| 02/17/14 | 0320 / 0500 | 72275 / J2250 | TC | 1 | $13,075.00 | | $13,075.00 | PI | 97 | | | | | $0.00 | |
| CONTROL # 452020942101 SUBTOTAL | | | | | $68,517.00 | $7,436.13 | $64,798.93 | | | | | | | $3,718.07 | |

| | | | |
|---|---|---|---|
| | CLAIM TOTAL PATIENT RESPONSIBILITY | | $3,718.06 |

PLEASE NOTE THAT THE PATIENT HAS A CONSUMER ACCOUNT THAT MAY PAY SOME OR ALL OF THIS CLAIM. IF FUNDS ARE AVAILABLE, A CHECK WILL BE SENT TO YOU WITHIN 10 BUSINESS DAYS FROM THE DATE OF THIS TRANSACTION AND CAN BE APPLIED TO REDUCE THE PATIENT'S RESPONSIBILITY.

RED OAK HOSPITAL
REDOAK HOSPITAL
17400 RED OAK DR
HOUSTON, TX 77090

DATE: 05/08/14
TIN: 45-4432712
NPI: 1114293701
CHECK NUMBER: OK 92675265
CHECK AMOUNT: $0.00

**PROVIDER**
**EXPLANATION OF**
**BENEFITS**

## OVERPAYMENT REDUCTION DETAILS

| MEMBER LAST NAME | PATIENT FIRST NAME | MEMBER ID# | PATIENT ACCT# | POLICY NUMBER | CLAIM/CONTR OL# | DATE(S) OF SERVICE | ORIGINAL OVERPAYMENT AMOUNT | PREVIOUSLY DEDUCTED | OVERPAYMENT DEDUCTED |
|---|---|---|---|---|---|---|---|---|---|
| | | XXXXX8522 | 278162A | 0717789 | 0432240942301 | 10/04/13 | $42,705.19 | $37,439.93 | -$5,265.26 |
| | | XXXXXG131 | 259232A | 0268272 | 0423871460101 | 05/02/13 | $34,718.33 | | -$17,851.03 |
| THIS REPRESENTS PREVIOUS BENEFITS THAT WERE PAID IN ERROR | | | | | | | **TOTAL DEDUCTIONS** | | -$23,116.29 |
| | | | | | | | **TOTAL PAID TO THE PROVIDER** | | $0.00 |

REMARKS::

THE AMOUNT PAYABLE FOR THIS EXPLANATION OF BENEFITS HAS BEEN USED TO REDUCE AN OVERPAYMENT MADE ON THE GIVEN CLAIM(S). PLEASE ADJUST YOUR PATIENT ACCOUNT BALANCE ACCORDINGLY.

14

33.     Defendants knew or should have known that the alleged "overpayment" to Patient Y is to a fully-insured plan account of the Plan's co-fiduciary, United. To convert the benefits payment for patient X from Defendants' ERISA plan to another stranger, Patient Y, insured by United is virtually paying from Defendants' benefit Plan to co-fiduciaries, United's own account. The Defendants knew or should have known that the co-fiduciary has abstracted or converted the Plan Assets and misused Patient X's benefit entitlement to the use of Patient Y's Plan, and this act is a breach of fiduciary duty against the best interest of the Plan Beneficiary under ERISA. The Defendant knew or should have known that the Plan Assets has been knowingly and intentionally converted and embezzled to pay the Plan's co-fiduciary, United' own account with Defendants' actual knowledge and authorization even after the Plaintiff alerted the Defendants on multiple occasions with appeal letters (sent on July 14, 2014, October 23, 2015, and April 25, 2016), emails between Plaintiff and United's in-house attorney (discussed in detail below), and an actual complaint to the Department of Labor on November 6, 2014 with Complaint Number 201563-02008.

34.     Defendants knew or should have known that the Provider EOB is fraudulent because the ERA 835 certifies that the Defendants, through United, had withdrawn at least one check *"QK92675266 - $42,639.56"*, and that check amount is much greater than the $7,436.13 allowed on the Provider EOB. Defendants continue to ignore or cover-up this type of fraudulent practice even after repeated alerts and writing through notices, appeals, and correspondence from Plaintiff that Plan's co-fiduciary, United, is a suspected perpetrator for engaging in the statutory prohibited self-dealing and embezzlement by converting and abstracting the Plan benefits payment into its own use and paying to its own account full-insured accounts, like Patient Y. Defendants knew or should have known the legal and financial conflict of interest caused by United's self-dealing; however, Defendants continued to authorize, conspire and orchestrate, with United to investigate the alleged violation by United's own act in reckless breach of co-fiduciary duties in self-dealing and failure to safeguard Plan Assets in the best interest of the Plan Beneficiary.

Instead, Defendants colluded and conspired to serve only the best interest of the Plan co-fiduciary, United, at the cost and in harm of the Plan Beneficiary, Patient X. Even after the Department of Labor's official investigation and Plaintiff's last appeal letter dated April 25, 2016, Defendant continued to conspire with United, and United in-house counsel Elizabeth Schmiesing, to conceal the embezzlement and deceive the Plaintiff on May 6, 2016, with respect to Defendants Plan Official ERA 835 with certification of conversion and embezzlement.

35.     Defendants knew and should have known that they had the responsibility and duty to investigate and unilaterally determine, without the assistance of United, if Plaintiff's suspicions and allegation were absolutely accurate or true, especially after Plaintiff filed an official complaint with the Department of Labor. Additionally, Defendant failed to and intentionally waived any rights  to officially correct the Plaintiff's statement of fact with respect to the Plan, ERA 835, and the Provider EOB by refusing to disclose any and all Plan Documents or cancel the checks *"QK92675266 - $42,639.56"*, and    *"QK65360073 - $31,037.52"*, in order to rule out any misunderstanding or exclusion of any embezzlement. Instead, Defendants and United continue to maintain and support its action of withholding or converting Patient X's benefit payment of Defendants' Plan Assets to pay United's own fully-insured account is not embezzlement or self-dealing as prohibited under 18 U.S.C. § 664 and 29 U.S.C. §1106.

### *18 U.S. C. § 664 - Theft or Embezzlement from Employee Benefit Plan*

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both.

As used in this section, the term "any employee welfare benefit plan or employee pension benefit plan" means any employee benefit plan subject to any provision of title I of the Employee Retirement Income Security Act of 1974.

*29 U.S.C. § 1106 – Prohibited Transactions*

> *Transactions between Plan and Party in Interest* – A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect – transfer to, or use by or for the benefit of a party in interest, of any assets of the plan…

> *Transactions between Plan and Fiduciary* – A fiduciary with respect to a plan shall not – (i) deal with the assets of the plan in his own interest or for his own account, (ii) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of in participants or beneficiaries, or (iii) receive and consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

36.     It is important to note that Plaintiff is ***not disputing*** the aforementioned facts that (i) Plaintiff ***received proper verification*** from Defendants, through United, to provide services to Patient X; (ii) Defendants, through United, ***internally adjudicated*** Plaintiff's claim for benefits and ***came to a determination*** that that the Allowed Amount for Patient X was to be paid to Plaintiff to reimburse Plaintiff for the services Plaintiff provided to Patient X; and (iii) the amount of the Allowed Amount determined by Defendants, though United, is incorrect.

37.     Plaintiff sent administrative appeals on July 14, 2014, October 23, 2015, and April 25, 2016, to Defendants and United, and Plaintiff has not received anything from Defendants or United except for a Summary Plan Description and a check $7,400 after Plaintiff filed the Department of Labor complaint. Plaintiff was informed by United's in-house attorney, Elizabeth Schmeising on May 6, 2016, that Defendants had advised her to inform Plaintiffs that Defendants will take ***no further corrective action than what has been done***. Therefore, the Plaintiff has completely and unequivocally exhausted any and all required administrative remedies and good faith appeals, and any further communications or efforts with Defendants will be fruitless.

38.     The Plan Administrator, Leslie Dale, on August 13, 2014, instructed and directed Plaintiff to appeal to its co-fiduciary United for full and fair review when she knew and should have known that Plaintiff was not disputing the Allowed Amount determination of "$75,367.13" on

the Plan official ERA 835, but Plaintiff was merely seeking for the benefits payment checks *"QK92675266 - $42,639.56"*, and *"QK65360073 - $31,037.52"* and withhold after payment *"WO 20130502 259232A",* that was converted to pay on United's own account of Patient Y, which was a prohibited transaction and an absolute conflict of interest. From August 13, 2014, to May 6, 2016, Defendants continued to authorize, conspire, and orchestrate the embezzlement and concealment scheme to convert benefit payments into co-fiduciaries' own account, meanwhile direct Plaintiff appeals to United for full and fair review as required under ERISA were consistently denied or not responded to. On May 6, 2016, the co-fiduciary United's in-house counsel, at 11:51 a.m. CST called the in-house counsel of the Plaintiff, Ebad Khan, to inform Plaintiff that the Plaintiff's last appeal letter dated April 25, 2016, to the Defendants was redirected to United for full and fair review; thus, to further enhancing Plaintiff's belief that no full and fair review is possible with absolute conflict of interest when the co-fiduciary, United, is fighting the Plaintiff to keep benefits payment money for its own account for already paid checks *QK92675266 - $42,639.56"*, and *"QK65360073 - $31,037.52* and withhold of *"WO 20130502 259232A - $34,718.33"*

39.     Defendants failed to issue ERISA mandated benefits notifications while making initial adverse benefit determinations and responding to subsequent administrative appeals upon review of Patient X's claim. More significantly, Defendants failed to issue ERISA compliant EOBs containing the ERISA mandated statement:

> *29 C.F.R. 2560.203-1(g) – Manner and Content of Notification of Benefit Determination*
>
> A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

40.     Additionally, Defendants failed to, in accordance with 29 C.F.R. 2560.203-1 provide a claimant [Plaintiff] with written or electronic notification of any adverse benefit determination which shall include: (i) the specific reason or reasons for the adverse determination;

(ii) reference to the specific plan provisions on which the determination is base; (iii) a description of any additional material or information necessary for the claimant to  perfect the claim and an explanation of why such material or information is necessary; (iv) a description of the plan's review procedures and the time limits applicable to such procedures including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review; and (v) any additional information free of charge upon request.

41.    Defendants knew or should have known that ERISA statute regulations provide "claimants" a right to bring a civil action, in accordance with 29 C.F.R. 2560.203-1 (b)(4):

> The claims procedures do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination",

Plaintiff has exhausted all administrative appeal requirements and bring a civil action as the authorized representative of claimant, Patient X.

42.    Although on August 13, 2014, Defendants stated that "Without waiving any defenses available to it under ERISA or the Plan regarding the scope or validity of the assignment you enclosed…", Defendants have always had the opportunity to challenge the validity of the Assignment of Benefits received by Defendants; nonetheless, Defendants have practically chosen not to challenge the scope and validity of the Assignment of Benefits since August 13, 2014, through May 6, 2016, and therefore, Defendants have practically waived its right to challenge the validity and scope of the Assignment of Benefits throughout the administrative appeals process.

43.    Defendant knew or should have known that ERISA claim regulation prohibit any anti-assignment and guarantees claimants with ERISA full and fair review: "The claims procedures do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination." Defendants have continuously failed to provide Plaintiff-claimant, with a valid and unchallenged full and fair review guaranteed under ERISA because Defendants have delegated the Plan co-fiduciary, United, to pay

Plan Assets to the co-fiduciaries own account against the claimant rights under the Plan, thus

creating an absolute conflict of interest.

44.     On 4/16/2015, 6/22/2015, and 8/14/2015, United in-house attorney certified that the

Defendants knowingly and intentionally had given United discretionary authority and authorized

United to abstract and convert approved payment checks to pay United's own account even though

United never made any allegation of overpayment for Patient Y"

> On April 16, 2015, Betsy Schmiesing communicated to Plaintiff's counsel Dilip Amin the following: "Please do not communicate with Gap. Gap had made it clear to us that it wishes United/Optum to resolve this matter. If you are not willing to accept my representation, I will endeavor to get some sort of formal authorization from Gap."

> On June 22, 2015, Betsy Schmiesing communicated to Plaintiff's counsel Dilip Amin the following: "I recently learned that Gap authorized (and in fact instructed) Red Oak to deal with United in its stead via the attached letter. As you know, Optum, like United Healthcare, is a wholly-owned subsidiary of UnitedHealth Group. Optum contracts with United to handle overpayment recovery issues, and its authorized to address this issue on United's behalf."

> On August 14, 2015, Betsy Schmiesing communicated to Plaintiff's counsel Dilip Amin the following: "With respect to the Gap, however, Red Oak was instructed by the plan to deal with UHC, and I am the in-house attorney handling this matter and was therefore able to work in this issue with Red Oak."

### D.     *Plaintiff as Authorized Representative-Claimant of Patient X*

45.     Plaintiff is an OON provider who routinely treats United beneficiaries, either

through self-insured plans or fully-insured plans. As an OON provider, Plaintiff has no contract

with United and has never entered into a United PPO Contract. Plaintiff has never agreed, in

writing or otherwise, that Defendants or United may withhold payments otherwise owed by one

United Plan in order to recover alleged prior overpayments made by another United Plan or for a

different United fully-insured Plan. Similarly, Plaintiff has not agreed to allow United to take the

offset challenged herein. Moreover, Patient X has entered into agreements with Plaintiff pursuant

to which Patient X agrees that he is liable to Plaintiff for any amounts billed by Plaintiff that

Defendants, through United, fail to pay, consistent with the terms and conditions of the Plan.

46.     On February 17, 2014, Patient X signed a form, the ***Legal Assignment of Benefits***

***and Designation of Authorized Representative*** (hereinafter, "Assignment"), which includes the

following statement explicitly authorizing Plaintiff to bring legal action under ERISA (Assignment

is attached as Exhibit C):

> In considering the amount of medical expenses to be incurred, I, the undersigned,
> have insurance and/or employee health care benefits coverage with the above
> captioned, and hereby assign and convey directly to the above named healthcare
> provider(s), as my designated Authorized Representative(s), all medical benefits
> and/or insurance reimbursement, if any, otherwise payable to me for services
> rendered from such provider(s), regardless of such provider's managed care network
> participation status. I understand that I am financially responsible for all charges
> regardless of any applicable insurance or benefit payments. I hereby authorize the
> above named provider(s) to release all medical information necessary to process my
> claims under HIPAA. I hereby authorize any plan administrator or fiduciary, insurer
> and my attorney to release to such provider(s) any and all plan documents, insurance
> policy and/or settlement information upon written request from such provider(s) in
> order to claim such medical benefits, reimbursement or any applicable remedies. I
> authorize the use of this signature on all my insurance and/or employee health
> benefits claim submissions.
>
> I hereby convey to the above named provider(s), to the full extent permissible under
> the law and under any applicable employee group health plan(s), insurance policies
> or liability claim,  any claim, chose in action, or other right I may have to such
> group health plans, health insurance issuers or tortfeasor insurer(s) under any
> applicable insurance policies, employee benefits plan(s) or public policies with
> respect to medical expenses incurred as a result of the medical services I received
> from the above named provider(s), and to the full extent permissible under the law
> to claim or lien such medical benefits, settlement, insurance reimbursement and any
> applicable remedies, including, but are not limited to, (1) obtaining information
> about the claim to the same extent as the assignor; (2) submitting evidence; (3)
> making statements about facts or law; (4) making any request, or giving, or
> receiving any notice about appeal proceedings; and (5) any administrative and
> judicial actions by such provider(s) to pursue such claim, chose in action or right
> against any liable party or employee group health plan(s), including, if necessary,
> bring suit by such provider(s) against any such liable party or employee group
> health plan in my name with derivative standing but at such provider(s) expenses.
> Unless revoked, this assignment is valid for all administrative and judicial reviews
> under PPACA, ERISA, Medicare and applicable federal or state laws. A photocopy
> of this assignment is to be considered as valid as the original.  I have read and fully
> understand this agreement.

47.     In addition to Patient X, the Plan Beneficiary, making Plaintiff his Authorized

Representative-Claimant, the Assignment is effective to transfer from Patient X to Plaintiff all of

the claims, rights, causes of action and legal and equitable remedies available to them, including, but not limited to the specific claim asserted herein.

48.     Plaintiff is informed and believes that such Assignment is not barred by the Plan, but that even if the Plan purported to bar such Assignments, then that bar would be void or voidable because:

a.     The Assignment makes Plaintiff the Authorized Representative of the Patient X for purposes of asserting a benefit (*i.e.*, payment under the Plan or pursing an appeal from an adverse benefit determination). The following regulations were adopted pursuant to ERISA and the Patient Protection and Affordable Care Act (hereinafter, "ACA") and pursuant to: (i) 29 C.F.R. §2560.503-1(b)(4), the Plan shall not "preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination; and (ii) 29 C.F.R. §2590.715-2719(a)(2)(iii), "For purposes of [that] section, references to claimant include a claimant's authorized representative.

b.     The Plan has dealt directly with Plaintiff with actual knowledge of the Assignments, but without any objection to the Assignment, and without giving any notice of any Plan Prohibition on assignment. The Plan has also pre-authorized services or procedures directly with Plaintiff, and paid claims directly to Plaintiff outside of the claim asserted herein without ever contacting, consulting or obtaining any input from Patient X, and without challenging or objecting to any of the previous Assignments executed by Participants and Beneficiaries outside of the claim asserted herein. Based on the continued course of conduct, Plaintiff has relied on its right to asset claims directly with the Plan or its Third Party Administrator in continuing to render services (including providing use of a facility) or performing procedures for Patient X. By reason of the foregoing, the Plan is estopped from asserting that claims for reimbursement for medical services or procedures, or any of the other claims asserted herein, are subject to any anti-assignment provision in the Plan.

c.      At no time during the dealings between Plaintiff and Defendants did Defendants ever state that a specific reason for any adverse benefit determination was an anti-assignment provision, nor did they reference a specific anti-assignment provision in any Plan document.

d.      By reason of the Plan's continuing course of conduct in not asserting or relying on any anti-assignment provision, the Plan has waived any arguable right to argue, assert or rely upon any anti-assignment provision in the Plan.

49.      The Plan purports to provide OON benefits to its beneficiaries.   The Plan promises its beneficiaries the freedom to receive and obtain reimbursement for health care services from his or her provider of choice, including services obtained from OON providers. Under the terms of the Plan, the Plan must promptly pay benefits for OON services based upon the usual, customary and reasonable rate ("UCR") for that service in the same geographic area.

### E.      *Defendants' ERISA Violations*

50.      At all relevant times, and with specific respect to Defendants' acts alleged herein, the Defendants, as ERISA fiduciaries to the Plan, delegated all claims administration duties to United. In particular, Defendants are not only responsible for interpreting and applying Plan terms, making coverage and benefit decisions, complying with ERISA's notice and appeal requirements set forth in 29 C.F.R. §2560.503-1 (ERISA Claims Procedure") and effectuating benefit payments from Defendants' own assets (since Defendants' are co-fiduciaries of a self-insured plans), but are also responsible for United, the Plan's TPA, and its interpretation and application of Plan terms, making coverage and benefit decisions, complying with ERISA's notice and appeal requirements set forth in 29 C.F.R. §2560.503-1 (ERISA Claims Procedure"), and effectuating benefit payments from Defendants' assets.

51. As ERISA fiduciaries, Defendants *must* discharge its duties with respect to the Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of … providing benefits to participants and their beneficiaries." 29 U.S.C. §1104(a)(1). This means,

among other things, that Defendants must ensure that its Plan is administered and governed "in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with [ERISA]." *Id*. By allowing United to convert and embezzle Plan Assets to pay its own accounts and thereby imposing the liability for the unpaid bill on the Plan Beneficiary, Patient X, Defendants have violated their obligations.

52.     Defendants know or should have known that the Defendants' Plan does not permit it or its claims administrator to deny or reduce benefits for one United Insured in order to recover "overpayments" that a different United Plan purportedly made with respect to claims submitted on behalf of a different United Insured. The terms of the Plan requires the Plan actually pay benefits for Covered Services; it does not provide that this payment obligation may be satisfied through a unilateral "reallocation" that effectively takes benefits owed by Defendants' Plan for Covered Services and uses those benefits to offset an alleged and disputed overpayment that United "overpaid" in the past.

53.     Additionally, the Plan provides that Plan Beneficiaries remain liable for any billed amounts that the Plan refuses to pay OON providers, such as Plaintiff. Thus, United's misconduct, authorized by Defendants, has also imposed a financial liability on Patient X for treatment that United acknowledged to be a Covered Service.

54.     In addition to Defendants and United violating the terms of the Plan, Defendants and United also breached its fiduciary duty to comply with the minimum requirements for "full and fair review" of claims under ERISA and the regulations promulgated thereunder. United's failure to actually send checks to Plaintiff in the amounts owed under United Plans governed by ERISA constituted an "adverse benefit determination" under ERISA that obligated United (as the Plan's TPA) to provide Plaintiff with ERISA mandated notice and appeal rights. UHC ignored this legal requirement.

55.     The definition of "adverse benefit determination" included in the ERISA Claims Procedure includes not only "a denial, reduction, or termination of" benefits, but also a "failure to

provide or make payment (in whole or in part) for" a benefit. 29 C.F.R. § 2560.503-1(m)(4). United's offsets, therefore, constitute adverse benefit determinations. Defendants, through United, however, failed to treat its unilateral decision to withhold payment as an adverse benefit determination, and did not provide *any* of the informational items or appellate procedures mandated by the ERISA Claims Procedure. For example, on the EOB sent to Plaintiff concerning offset claims, it failed to:

> (i)      set forth the specific reason or reasons for the refusal to pay the covered benefits, 29 C.F.R. § 2560.503-1(g)(1)(i);

> (ii)     identify the "plan provision" that supported its refusal to actually pay the covered benefits, 29 C.F.R § 2560.503-1(g)(1)(ii);

> (iii)    describe any additional material or information necessary for the United Insured or Plaintiff to receive the benefit, 29 C.F.R § 2560.503 1(g)(1)(iii);

> (iv)     describe the applicable plan review procedures and time limits applicable thereto, 29 C.F.R § 2560.503-1(g)(1)(iv);

> (v)      advise the recipient of the right to bring a civil action under section 502(a) of ERISA following the adverse benefit determination on review, 29 C.F.R. § 2560.503-1(g)(1)(iv);

> (vi)     identify the rule or protocol that it relied upon or state that the rule or protocol would be provided upon request, C.F.R. § 2560.503-1(g)(1)(v)(A); and

> (vii)    did not provide *any* appeal rights – much less the type of rights set forth in the ERISA regulations, 29 C.F.R. § 2560.503-1(h).

44.     Because Defendants and United failed to comply with the ERISA Claims Procedure, any administrative remedies are "deemed" exhausted pursuant to 29 C.F.R. § 2560.503-1(l). Exhaustion is also excused because it would be futile to pursue administrative remedies, as Defendants and United do not acknowledge that offsets constitute adverse benefit determinations at all, and thus offers no meaningful administrative process for challenging such offsets.

**F.       Together   with   United,   Defendants   Owe   Fiduciary   Duties   to   the Plan Beneficiary, Patient X**

56.       Under ERISA, a self-insured health benefit plan must set forth in a written official plan document or plan instrument specific details regarding the Plan, such as the terms of eligibility for enrollees, the types of benefits covered, and more. Pursuant to public policy set forth in ERISA, as a self-insured welfare benefit plan, the Plan shall be interpreted and implemented solely in the best interests of the Plan Beneficiaries and in accordance with the Plan Document/Instrument.[13]

*29 U.S.C. § 1104 – Fiduciary Duties*

*Prudent Man Standard of Care* - A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and: (A) for the exclusive purpose of providing benefits to participants   and their beneficiaries…; (D)   in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent   with the provisions of this subchapter and subchapter III.

57.       GAP serves as both the Plan Sponsor and Plan Administrator for the Plan. Additionally, GAP employs CYNTHIA RADOVICH and LESLEY DALE, who hold the positions of Plan Administrator and Benefits Manger for the Plan. Through Ms. Radovich's position with the Plan, coupled with the Form 5500 portraying Ms. Radovich as the Plan Administrator, Ms. Radovich is charged with the responsibilities and duties of the Plan's Plan Administrator. Additionally, through Ms. Dale's position with the Plan as the Benefits Manager, Ms. Dale is also charged with the responsibilities and duties of the Plan's Plan Administrator. For all intents and purposes and in accordance with ERISA, Defendants Ms. Radovich and Ms. Dale serve as trustee-like fiduciaries of the Plan.

58.       Not only must the Defendants, act in accordance with the Plan's governing documents and solely in the interests of the Beneficiaries as aforementioned, the Plan Fiduciaries are also statutorily barred from the following:

---

[13] *See* 29 U.S.C. § 1104(a)(1)(A)

*29 U.S.C. § 1106 – Prohibited Transactions*

> *Transactions between Plan and Party in Interest* – A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect – transfer to, or use by or for the benefit of a party in interest, of any assets of the plan…

> *Transactions between Plan and Fiduciary* – A fiduciary with respect to a plan shall not – (i) deal with the assets of the plan in his own interest or for his own account, (ii) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of in participants or beneficiaries, or (iii) receive and consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

59.    Both Defendants and United, serve as co-fiduciaries to the Plan. Defendants knowingly empowered United with discretionary authority and control over the claims administration of the Plan, which includes, but is not limited to, the adjudication of medical claims (including, but not limited to, full and fair review of appealed claims), determining the coverage and reimbursements, and the disposition of Plan Assets. Alarmingly, despite the broad power entrusted to United, Defendants failed in their statutory fiduciary responsibility to oversee, check, and properly govern the administration of the Plan in accordance with the Plan Documents.

## COUNTS AGAINST DEFENDANTS

The Plaintiff, as a statutory defined Claimant with a valid and unchallenged Assignment of Benefits, is entitled to ERISA rights "to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review" after Plaintiff has legally and administratively exhausted any and all appeal remedies.[14] Therefore the Plaintiff is entitled to pursue Benefit claims: (i) to recover benefits due for already approved claims but abstracted and converted by the Defendants' co-fiduciary, United; (ii) breach of fiduciary duty claims under 29 U.S.C. § 1132(a)(2) in violation of 18 U.S.C. § 664, 29 U.S.C. § §1104, §1105, §1106(b)(1)(d); injunctive relief to enjoin the Defendants from engaging in prohibited transaction 29 U.S.C. §

---

[14] 45 CFR 147.136 (a) - Internal claims and appeals and external review processes. (iii) Claimant. Claimant means an individual who makes a claim under this section. For purposes of this section, references to claimant include a claimant's authorized representative.

1132(a)(3); and injunctive relief to permanently remove the Defendants  Cynthia Radovich and

Lesley Dale from serving as fiduciaries to the Plan permanently under 29 U.S.C. § 1132(a)(3).

## V.  COUNT ONE

### *Claims under ERISA § 502(a)(1)(b) and 29 U.S.C.§ 1132(a)*

60.     Plaintiff incorporates and realleges the allegations set forth above.

61.      Plaintiff is a statutory defined Claimant with a valid and unchallenged

Assignment from Patient X who is a Beneficiary under the Plan. ERISA Claimants are entitled to

ERISA rights to bring a civil action under section 502(a) of the Act following an adverse benefit

determination on review. It is undisputed or unchallenged by Defendants that Plaintiff has

exhausted administrative appeal remedies; additionally, Plaintiff is not disputing the Plan's

determination of eligible amount of $75,367.13, but Plaintiff has never received the benefits

payments checks **"QK92675266 - $42,639.56"**, and  **"QK65360073 - $31,037.52"** that were either

embezzled or unpaid by the co-fiduciary, United. Plaintiff is seeking a judgment for Plaintiff to

receive the benefits it is legally due and entitled to, but were converted by the Defendants. As the

Claimant designated by the Plan Beneficiary, Patient X, Plaintiff remains to be harmed or injured

for the amount of $75,367.13 that was embezzled by the Defendants and co-fiduciary, United.

Plaintiff is entitled to recover benefits due to it and Patient X under the terms of the Plan and

applicable law, including (but not limited to) ERISA § 502(a)(1)(B).

## VI. COUNT TWO

### *Breach of Fiduciary Duty and Co-fiduciary Liability under 18 U.S.C. § 664 and 29 U.S.C. § §1104, §1105, §1106(b)(1)(d)*

62.     Plaintiff incorporates and realleges the allegations set forth above.

63.     Defendants as Plan Fiduciaries owe Plaintiff statutory fiduciary duties under 29

U.S.C. § 1104 to discharge its duties in the best interest of the Plan Beneficiary, Patient X, by

safeguarding the Plan Assets and responsibly selecting third party service providers as a co-

fiduciary under 29 U.S.C. § 1105;

64.     Defendants knew or should have known ERISA prohibits Plan Asset embezzlement under 18 U.S.C. § 664 and self-dealing under 29 U.S.C. § 1106, but knowingly failed its statutory duties with actual knowledge that co-fiduciary has systematically and historically abstracted, converted, and otherwise embezzled the Plan Assets of benefits payment checks *"QK92675266 - $42,639.56"*, and  *"QK65360073 - $31,037.52"* for Plan Beneficiary for use of another, Patient Y, a stranger to the Defendants' Plan but insured plan member by co-fiduciary's inured account, and to pay co-fiduciary United's own account ultimately.

65.     Even after Defendant was repeatedly alerted of evident embezzlement, self-dealing, and conflict of interest, under ongoing Department of Labor investigation for alleged embezzlement and self-dealing conflict of interest, Defendants knowingly failed to do it due diligence and timely investigate the alleged violations and continued to conspire, authorize, and orchestrate with co-fiduciary, United, to conceal the alleged embezzlement and self-dealing, and continue to fail to take corrective actions to remedy detected offenses in violation of 18 U.S.C. § 664 and 29 U.S.C. § §1104, §1105, §1106(b)(1)(d).

66.     As evidenced above, proximately, as a direct result of Defendants' breach of fiduciary duties encompassed under the statutes, "a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." [15] ALTERNATIVELY, Plaintiff is seeking a surcharge remedy thus to obtain equitable relief for violations of 18 U.S.C. § 664 and 29 U.S.C. § §1104, §1105, §1106(b)(1)(d), as evidenced on administrative records has shown that the violation of the fiduciary duty imposed upon that fiduciary and the actual harm was directly and legally caused by the Defendant violation.

## VII. COUNT THREE

### Injunctive Relief to Stop ERISA Prohibited Cross-Plan Overpayment Recoupment

67.     The Defendants have historically engaged in systematic plan wide cross-plan overpayment recoupment  by converting the Plan benefits payment from self-insured plan to the

---

[15] Cigna v. Amara - http://www.supremecourt.gov/opinions/10pdf/09-804.pdf

co-fiduciary, United' fully insured plans; thus, ultimately paying its own account as evidenced by the case subject to in action. Defendants' reckless violation of its fiduciary duties and embezzlement of plan assets are strictly prohibited under 18 U.S.C. § 664 and 29 U.S.C. § §1104, §1105, §1106(b)(1)(d), and through its prohibited actions, Defendants harmed every Plan Beneficiary. Plaintiff is seeking injunctive relief to enjoin Defendants from engaging in the same systematic and historical fiduciary breach and harming the plan beneficiary by unlawfully abstracting and concerting a Plan Beneficiaries' benefit payments to the use of another to pay the Plan co-fiduciary' own account. This injunctive relief is made in accordance with 29 U.S.C. § 1132(a)(3).

## VIII. COUNT FOUR

### *Injunctive Relief to Remove Plan Fiduciaries Cynthia Radovich and Lesley Dale as Fiduciaries as Administrators to the Plan*

68.     Defendants, Cynthia Radovich and Lesley Dale, and co-fiduciary United, committed fiduciary breaches with actual knowledge, malice, and intent even after repeated and alerts from Plaintiff and Department of Labor by recklessly disregarding their fiduciary duties encompassed under federal statute and regulations. Defendants, Cynthia Radovich and Lesley Dale, and co-fiduciary United are continuously and irrevocably harming and injuring Plan Beneficiaries with no intention to stop. Plaintiff is seeking for injunctive relief or a declaratory order to remove Defendants, Cynthia Radovich and Lesley Dale as fiduciaries and administrators to the Plan permanently, and to prevent Defendants, Cynthia Radovich and Lesley Dale from ever being fiduciaries and administrators to any ERISA governed plans in the future.

## IX. COUNT FIVE

### *Failure to Provide Full and Fair Review*

69.     Plaintiff incorporates and realleges the allegations set forth above.

70.     Although Defendants were obligated to do so, Defendants failed and refused to provide a "full and fair review" to Plaintiff on Patient X's claim, on their own and by and through

their agent and co- fiduciary United, and otherwise failed to make necessary disclosures pursuant to 29 U.S.C. §1133 and the regulations promulgated under ERISA. Plaintiff requested appeals at least three times for Plaintiff X's claim and exhausted all of its administrative remedies under the Plan before bringing this lawsuit.

71.    Defendants' misconduct recited above was the direct and proximate cause of Plaintiff's harm.

## X. COUNT SIX

### *Failure to Provide Requested and Required Documentation*

72.    Plaintiff incorporates and realleges the allegations set forth above.

73.    Defendants have not provided the following requested documents, which ERISA requires it to produce to Plaintiff upon request: a complete and accurate master governing plan document, a complete and accurate SPD, the complete administrative claim file, and all documents showing the actual basis for the adverse benefit determination and the methodology used in applying that basis and making that determination.

74.    Defendants' failure to comply with Plaintiff's request for information pursuant to 29 U.S.C. §1132(c)(1)(B) provides a civil penalty/sanction in the amount of $110.00 per day for such failure or refusal to provide the requested documents and information and Plaintiff is entitled to receive this sanction against Defendants, in addition to an order from this Honorable Court compelling Defendants to produce the requested documents.  Defendants have received numerous written requests (on at least three separate occasions) from Plaintiff specifically requesting these documents, but Defendants knowingly and intentionally failed and refused to provide them, in violation of ERISA, causing harm and prejudice to Plaintiff.  Defendants' failure to disclose the requested plan documents was intentional, willful, and committed in bad faith, to further deceive Plaintiff with misrepresentations as to benefits covered under the plan.

## XI. COUNT SIX

### *Attorney's Fees*

75.     Plaintiff has presented claims to Defendants demanding payment for the value of the services described above. More than 30 days have passed since those demands were made, but Defendant has failed and refused to pay Plaintiff. As a result of Defendants' failures to pay these claims, Plaintiff was required to retain legal counsel to institute and prosecute this action. Plaintiff is therefore entitled to recover reasonable attorney's fees for necessary services rendered in prosecuting this action and any subsequent appeals.

76.     Plaintiff is also entitled to an award of attorney's fees on its ERISA claims. ERISA allows a court, in its discretion, to award "a reasonable attorney fee and costs of action to either party."[16]

77.      Plaintiff demands a jury trial on all issues for which trial by jury is permitted.

WHEREFORE,  PREMISES CONSIDERED, Plaintiff  respectfully  prays  that  this Honorable Court issue judgment against Defendants granting Plaintiff the following relief:

1.     Plaintiff's actual damages;

2.     Statutory penalties and surcharges permitted by law;

3.     Attorney's fees, including attorney's fees in the event of an appeal of this lawsuit;

4.     Prejudgment and post-judgment interest at the highest rates permitted by law;

5.     An injunction and/or other equitable relief as appropriate to arrest, correct, and prevent acts and omissions by Defendants that violate the Plan and/or ERISA, including, but not limited to, removal of Defendants as plan fiduciaries;

6.     Plaintiff's costs of court; and

7.     All other relief, legal and equitable, to which Plaintiff may be justly entitled.

---

[16] 29 U.S.C. §1132(g)(1). *See Hardt v. Reliance Std. Life Insurance. Co*., 130 S.Ct. 2149, 2152 (2010); *see also Baptist Mem. Hosp. - Desoto, Inc. v. Crain Auto., Inc.,* 392 Fed. Appx. 289, 299 (5th Cir. Miss. 2010).

Respectfully submitted,

*/s/  Ebad Khan*
Ebad Khan
State Bar #: 24092625
Federal Bar #: 2810999
Email:  ekhan@trinityhealthcarenetwork.com
17400 Red Oak Drive
Houston, Texas 77090
Telephone: 832.202.6028
Facsimile: 832.446.6961

ATTORNEY-IN-CHARGE FOR PLAINTIFF,
*REDOAK HOSPITAL, LLC*